awarded, dismissed, without costs. We fail to perceive in this record substantial evidence that the complainant Joan C. Laufer was dismissed because of her American national origin. Petitioner, Shiseido Cosmetics (America) Ltd. (SCA) a wholly-owned subsidiary of Shiseido Co., Ltd., of Japan, (Shiseido) is a New York corporation engaged in the distribution of Shiseido cosmetics to department stores in the United States and Canada. It is essentially uncontroverted that petitioner, Hisashi Takakura, appointed SCA's president in February of 1975, concluded after an investigation that the company faced significant financial losses in the forthcoming year, and so reported to the parent company. Shiseido directed a major reduction in SCA's sales outlets in the United States and Canada (from 700 to 70 or 80) with equivalent reductions in staff, particularly at the executive level. The then executive vice-president of SCA, Mark Goldsmith, was directed to prepare a plan for the dismissal of employees at the executive level. It was agreed that no new personnel were to be hired to replace those who were dismissed and that their responsibilities were to be assumed by persons already employed by the company. According to Goldsmith and Raymond De Bole, then SCA's comptroller and also involved in the preparation of the plan, Ms. Laufer was terminated in her position as director of national training in accordance with the plan then prepared and her title, though not her duties, was assumed by a Japanese national who had been with Shiseido since 1958. Both Goldsmith and De Bole testified that Ms. Laufer's termination was for business reasons incident to the major retrenchment that was occurring and wholly unrelated to her national origin. Neither was employed by SCA at the time of his testimony and the record discloses no reason to doubt the essential truth of what they said. Ms. Laufer's testimony that she overheard a conversation in which Takakura directed Goldsmith to replace her, although raising a limited question of credibility, does not seem to us substantial evidence, or indeed evidence at all, that she was removed because of her national origin. Nor do we find it significant that the termination of Ms. Laufer and other American employees was not accompanied by comparable dismissal of Japanese employees. It is apparent that the Japanese were in reality employees of the parent corporation assigned to an American subsidiary for varying periods of time as part of a rotation program of a familiar kind. The failure to dismiss such employees does not support the conclusion that a discriminatory policy was being pursued against Americans based on their national origin. We also note that following this program of retrenchment, the reduced staff continues to disclose a significant participation by Americans, some of them in high policy-making positions. Concur—Sandler, J. P., Sullivan, Bloom, Lupiano and Ross, JJ.

■ LOUIS DREYFUS CORPORATION et al., Respondents-Appellants, and ACLI INTERNATIONAL COMMODITY SERVICES Co., Appellant, v ACLI INTERNATIONAL, INC., et al., Appellants-Respondents, et al., Defendant.—Judgment, Supreme Court, New York County, entered February 27, 1979, which granted plaintiffs a judgment of $1,243,957 with interest of 6% per annum from January 1, 1974 to the date of judgment, together with costs and disbursements, and dismissed the defendants' counterclaims, unanimously modified, on the law, to the extent of reducing such judgment from $1,243,-957 to the sum of $142,355 with interest of 6% per annum from January 1, 1974, and, as so modified, affirmed, with costs and disbursements to defendants. Pursuant to a written partnership agreement dated as of June 30, 1971, between plaintiff L. D. Commodity Corp. and A. C. Israel Special Services, Inc. (the predecessor of defendant ACLI International Commodity Services, Inc.) a new partnership was formed, known as Louis-Dreyfus &

A. C. Israel Commodity Co. Plaintiff L. D. Commodity Corp. is a subsidiary of plaintiff Louis-Dreyfus Corporation and defendant ACLI International Commodity Services, Inc., is a subsidiary of ACLI International, Inc. The new partnership endeavored to and had as one of its purposes, the obtaining of a clearing membership on various commodities exchanges. Prior to obtaining such membership, the partners agreed to transact business independently and to pool and divide commission income less expenses. Rules of the Chicago Board of Trade Exchanges prohibited a clearing member from sharing commissions and required that an individual be a member or partner of a business for that business to obtain clearing membership status. To overcome those objections a new superseding partnership agreement dated as of April 12, 1972 was entered into between plaintiff Gerard Louis-Dreyfus, individually, and the two corporations which were partners in the prior partnership. The new partnership known as Louis-Dreyfus & A. C. Israel Commodity Co. obtained clearing membership on several exchanges. As to exchanges for which it did not obtain clearing membership, the new partnership employed defendant ACLI International Commodity Services, Inc., to clear transactions. The new partnership dissolved as of December 31, 1973 and the plaintiffs commenced this action seeking 50% of ACLI International Commodity Services, Inc.'s commissions. The predicate for this claim was that prior to the two written partnership agreements, there was an oral agreement between the parent corporations and their subsidiaries whereby they each agreed to a 50% distribution of commissions to the two Dreyfus corporations. In article 9.7 of each written partnership agreement it is provided that such agreement "constitutes the entire agreement, and supersedes any and all prior agreements and understandings, between the Partners with respect to the subject matter hereof." On this record it is clear that a partnership involving only the subsidiaries was contemplated so as to shield the parent corporations from unlimited liability as partners for any losses that might occur. Conspicuous by its absence is any understanding between the parties as to sharing of losses relevant to the terms of the alleged oral agreement. The parties to this action are extremely sophisticated businessmen and entities. Neither fraud nor unjust enrichment has been demonstrated. Accordingly, as there is no justification on this record, in view of the aforesaid, for awarding plaintiffs a 50% share of business generated by the partnerships and cleared by ACLI International Commodity Services, Inc., the judgment awarded to plaintiffs, except for the sum of $142,355 admitted by defendants to be due to plaintiffs, may not stand. Apart from this modification, the remaining issues were properly determined by Trial Term. Concur—Bloom, J. P., Lane, Markewich, Lupiano and Ross, JJ.

■ STATE OF NEW YORK, Appellant, v BLUE CREST PLANS, INC., Respondent.—Judgment, Supreme Court, New York County, entered March 15, 1979, which denied plaintiff's request for a permanent injunction and dismissed the complaint, unanimously reversed, on the law, with costs and disbursements, and the plaintiff is granted a permanent injunction enjoining the defendant from engaging in the business of insurance without a license from the Department of Insurance of the State of New York. Subdivision 1 of section 41 of the Insurance Law provides: "The term 'insurance contract' * * * shall * * * be deemed to include any agreement or other transaction whereby one party, herein called the insurer, is obligated to confer benefit of pecuniary value upon another party, herein called the insured or the beneficiary, dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such